FILED

August 4 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0577

DA 13-0577

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 226

GREGORY S. HALL,

      Plaintiff and Appellee,

    v.

DON HALL d/b/a DON HALL BUILDERS,
DONNA HALL d/b/a/ TOWN & COUNTRY
PROPERTY MANAGEMENT AND REAL
ESTATE, DEBRA CERNICK d/b/a
DEBRA'S MONTANA COUNTY REAL
ESTATE also d/b/a MONTANA COUNTRY
REAL ESTATE and JOHN HEINLEIN,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
                    In and For the County of Lincoln, Cause No. DV-07-67
                    Honorable C.B. McNeil, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Jeffry M. Foster, Davis, Hatley, Haffeman & Tighe, P.C., Great Falls,
            Montana

            Ada C. Montague, Franz & Driscoll, P.L.L.P, Helena, Montana

      For Appellee:

            Maxwell G. Battle, Jr., Battle & Edenfield, PLLC, Kalispell, Montana

                       Submitted on Briefs:  June 10, 2014
                                Decided:  August 4, 2015

Filed:

_____
                    Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    This case arises from a dispute over a home inspection performed by Don Hall of a home purchased by Gregory S. Hall in 2006. (Don and Gregory are not related.) Gregory filed a complaint against Don; the seller of the home, John Heinlein; real estate broker Donna Hall, also Don's wife; and real estate broker Debra Cernick. Gregory alleged that the defendants failed to disclose material defects in the property including structural leaks, a faulty furnace, clogged plumbing, and toxic mold. Defendants Donna Hall, Heinlein, and Cernick ultimately obtained summary judgment on the grounds that Gregory received a disclosure statement and had imputed knowledge of the defects. Gregory appealed, and the judgment was affirmed by this Court. The District Court, determining that Don had not filed a sufficient answer to the complaint, entered default judgment against Don in the amount of $206,522.80. After issuance of a writ of execution, Don asked for the default judgment to be set aside and also sought to claim exemptions. These requests were denied by the District Court. Don appeals. We reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2    Don, who represented himself during most of the proceedings, claims little knowledge of the legal system, and thus the timeline of his participation in this case requires close examination. Gregory filed his complaint on March 5, 2007, Judge Michael C. Prezeau presiding. On March 8, 2007, Gregory requested a substitution of judge. Judge C. B. McNeil assumed jurisdiction on March 20, 2007. A summons was issued to Don on March 5, 2007, naming Judge Prezeau as the presiding judge, and informing Don that he was

2

required to file a response within 20 days or suffer default.[1] The return of service indicates that Don was served with the summons and complaint on March 13, 2007. Don was thus required to appear or answer on or before April 2, 2007. Don submitted a financial affidavit and request for waiver of fees, which he signed on March 28, 2007, and which was filed April 4, 2007. The order waiving fees was signed by Judge McNeil on April 3, 2007, and also filed April 4, 2007. Don continued to receive service of all filings in the case, and on May 7, 2007, Don signed and returned a copy of the order calling in Judge McNeil.

¶3     The next filing by Don to appear in the record is a typed letter from Don to Judge Prezeau, filed in the District Court on September 20, 2007. There is no date reflecting when Don may have written or mailed the letter. In the letter, Don states that he received the summons and complaint on March 14, 2007, and would "try to answer this as best as I can," although he could not afford an attorney. He admitted that he looked over the house for structural damage and general appearance in July of 2006 and wrote up a short list of noticeable defects. He stated that he had retired two years earlier and only looked at the house as a favor. He stated that he was not paid for the inspection, did not have insurance, and is not licensed to conduct specialized inspections for issues such as mold. He noted that the house was older, and therefore likely to have some flaws. Nevertheless, he felt the house was in good shape. He indicated that he took no part in the buying and selling of the house. He suggested mediation of the case "between Mr. [Gregory] Hall and Mr. Heinlein [by] a person agreeable to both." He also stated, "I really think this should be dismissed and I am

---

[1] The time for a response under M. R. Civ. P. 12(a) (2007) was 20 days. The time for a response under current M. R. Civ. P. 12(a) is 21 days.

3

asking for a Dismissal on account of the fraudulent claims by Mr. [Gregory] Hall." The letter was copied to Judge McNeil on September 20, 2007, docketed as "Answer of Don Hall/Motion to Dismiss," and a page was placed in the record immediately following the letter indicating that a copy had been mailed to counsel for all parties.

¶4 On October 19, 2007, "[a]ll of the Defendants having filed an answer," a scheduling conference was set. On November 30, 2007, Gregory filed a "Motion to Determine Sufficiency of Writing as an Answer," attaching a handwritten letter Gregory's counsel, Maxwell Battle, had received from Don. Judge McNeil signed an order prepared by Battle stating "that the writing served upon Plaintiff's Counsel by Pro Se Defendant DON HALL does not comply with Rule 8, M. R. Civ. P." Judge McNeil inserted a handwritten note adding, "and the letter to Judge Prezeau filed Sept. 20, 2007." The order, filed November 28, 2007, directed Don to file an answer satisfying the requirements of M. R. Civ. P. 8 within 10 days. No further writings by Don were filed within that time. On February 11, 2008, Gregory moved for default against Don, which was entered by the District Court on February 20, 2008.

¶5 Defendants Donna Hall, Heinlein, and Cernick moved for summary judgment, which was granted on February 20, 2009. The District Court concluded that Donna Hall, as Gregory's agent for the purchase of the home, was aware of a possible defect in the furnace, and this knowledge should be imputed to Gregory. Further, the District Court did not find credible Gregory's claim that the page from the disclosure form on which the furnace defect was disclosed was missing. The District Court also noted Donna Hall's testimony that she informed Gregory of the furnace defect when he first toured the property and that no pages

4

were missing from the disclosure form she provided to Gregory. The District Court concluded that other defects alleged by Gregory, such as "toxic mold," were immaterial due to Gregory's concession that "this case would not exist but for his failure to 'see' the allegedly missing page" containing notice of the furnace defect. The determination that material defects were disclosed to Gregory undermined the factual basis of his claims against all defendants, including Donald. Gregory appealed, and this Court affirmed in a memorandum decision on November 10, 2010. *Hall v. Hall*, 2010 MT 243N, 359 Mont. 444, 249 P.3d 80.

¶6 On February 16, 2010, after entry of summary judgment in favor of defendants, Gregory requested "final default judgment" against Don. Gregory stated that default "on the issue of liability" had been entered against Don, and further stated that it was unknown whether Don objected to the motion because "[c]ontact with him is impractical and would serve no purpose under the circumstances of this case." Gregory requested damages in the amount of $206,522.80.

¶7 Each of the remaining defendants, Donna Hall, Heinlein, and Cernick, filed responses or notices of position objecting to the motion for a default judgment against Don. Donna Hall argued that "Don Hall's fate should be allowed to rise or fall with the rest of the Defendants, rather than entering a judgment against him based on claims and theories that saw no traction in any other capacity in this proceeding." Heinlein argued that despite the default, Hall had a right to a hearing on damages, which must be limited to those the plaintiff could reasonably prove as a matter of law. Cernick similarly argued that, based on the

5

earlier summary judgment ruling, "it appears . . . that a portion of the damages sought by Plantiff against Don Hall are not recoverable as a matter of fact or law."

¶8     Gregory moved to strike these responses, arguing that none of the remaining defendants or their counsel had standing to object on behalf of Don. Gregory provided correspondence with Tracy Axelberg, counsel for Donna Hall, in which Axelberg acknowledged that he did not have authority to act on Don's behalf, but said, "It's just the right thing to do, in my view. He did file a response to the complaint, at least in a fashion; not really responsive, but something as opposed to nothing." On April 1, 2010, Gregory's counsel, Battle, filed notice with the court of a letter received from Don stating, "I feel that you don't have a so called Default Judgment of any sorts against me or anyone. . . . I did answer your letter of Default over 2 years ago."

¶9     On April 14, 2010, the District Court granted Gregory's motions to strike and for default judgment. Judgment was entered against Don in the amount of $206,522.80. The District Court concluded, "Said Defendant [Don] has filed no appearance in this proceeding inclusive of consideration of the document filed by Plaintiff April 1, 2010 which attaches an unsigned letter to Plaintiff's counsel which does not constitute a response by Defendant Don Hall to the Motion for Default Judgment as a matter of law."

¶10    On October 8, 2010, the judgment being unpaid, a writ of execution was issued directing the sheriff to seize Don's personal property in order to satisfy the judgment. On December 14, 2010, Don filed a letter in which he "ma[de] a motion or appearance to have an unjustified Court Order of Default Judgment set aside and forever stricken . . . ." He stated that he had "recently found out that I cannot send any papers directly to the Judge,"

6

and thus many of his writings or responses may never have been considered by the court. He attached a copy of a letter to Judge McNeil, dated December 6, 2007, stating, "I received your letter Nov 30, 2007 about a hand written letter that I had sent out to Maxwell G. Battle Jr. some time in the early spring of 2007." The December 6 letter also stated, "I later wrote a different letter to Judge Prezeau here in Libby and tried to explain my case a little better and to also ask for a dismissal of the case. This letter was sent out on March 25, 2007. . . . I feel I had already answered all that I know how to, and I cannot hire anyone to help in this case. I still feel it should have been dismissed." This letter does not appear elsewhere in the record.

¶11   Gregory moved to strike the December 14 letter, including all attachments, and sanction Don. On January 5, 2011, the District Court granted the motion, signing an order that appears to have been drafted by Battle. The District Court concluded that Don's letter was untimely as a motion to set aside the default judgment. The District Court further ordered Don to pay Gregory's reasonable attorneys' fees and costs in responding to the letter. Don did not appeal the District Court's denial of his request for relief from the judgment.

¶12   On June 3, 2013, previous attempts at execution having been unsuccessful, Gregory requested a second writ of execution. The judgment by that time, including interest, totaled $270,809.48. Gregory also moved the District Court to order the sheriff's office to assist him in enforcing the writ. The order of assistance was issued June 7, 2010. A notice of seizure was filed on June 13, 2013, with an accompanying three-page list of items seized from Don's home, including fishing boats, construction tools and equipment, firearms, and

7

two pickup trucks. Don, then represented by counsel, moved for a hearing to assert exemptions. The District Court denied the motion on July 30, 2013. Don filed a notice of appeal in this Court on August 26, 2013, and after a financial eligibility screening was appointed pro bono appellate counsel. Don later filed for bankruptcy under Chapter 7 of the Bankruptcy Code. Discharge was granted August 12, 2014.

## STANDARD OF REVIEW

¶13 We view default judgments with disfavor in light of our policy that cases are to be tried on the merits. *Mont. Prof'l Sports, LLC v. Nat'l Indoor Football League, LLC*, 2008 MT 98, ¶ 21, 342 Mont. 292, 180 P.3d 1142. We review a district court's decision to deny a motion to set aside a default judgment for only a slight abuse of discretion. *Mont. Prof'l Sports*, ¶ 21.

## DISCUSSION

¶14 We first address whether, in light of the discharge in bankruptcy, this case is moot. Mootness is a threshold issue we must resolve before addressing the merits of a dispute. *Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 31, 333 Mont. 331, 142 P.3d 864. A matter is moot when the court can no longer grant effective relief or restore the parties to their original positions. *Serrania v. LPH, Inc.*, 2015 MT 113, ¶ 14, 379 Mont. 17, 347 P.3d 1237; *Havre Daily News*, ¶ 31. A discharge in bankruptcy "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(1) (2012). Further, a creditor may not commence or continue any action to collect from the debtor after discharge. 11 U.S.C. § 524(a)(2). A debtor's appeal from a discharged judgment may be considered moot, because where a

judgment is void and cannot be collected, the parties have already effectively been restored to their original positions and a court can offer no further relief. *See Serrania*, ¶ 15. Like *Serrania*, this case addresses a debtor's appeal from a judgment discharged in bankruptcy. In this case, however, the judgment was executed prior to the bankruptcy. There is still relief to be granted, because Don still has an interest in the return of personal property seized from his home. While the bankruptcy statutes void the judgment as a determination of Don's liability to Gregory and prohibit Gregory from further attempts to collect on that liability, they are silent on the topic of Don's present attempt to recover wrongfully seized items from Gregory. This Court is in a position to restore the parties, insofar as possible, to their original positions. The case is not moot.

¶15 On appeal, Don argues that the default judgment is void, but acknowledges that appeal from the order striking his motion to have the default judgment set aside, entered January 5, 2011, is not timely. Don therefore asks, "Is a pro se defendant entitled to have a default judgment voided and set aside despite not filing for timely appeal?" We construe this as a request for an out-of-time appeal, which we may grant "[i]n the infrequent harsh case and under extraordinary circumstances amounting to a gross miscarriage of justice . . . ." M. R. App. P. 4(6). The record before us demonstrates that this is such a case. Therefore, we consider Don's appeal from the District Court's order striking his motion to set aside default judgment.[2] In so doing, we look to the Montana Rules of Civil Procedure in effect at

---

[2] Gregory, on appeal, claims, "As of the present date, Don Hall has never moved to set aside either the initial default or the final default judgment." We fail to understand this assertion, as on December 14, 2010, Don filed with the District Court a document clearly purporting to be a "motion . . . to have an unjustified Court Order of Default Judgment set aside . . . ."

the time, noting that the rules were substantially revised effective October 1, 2011. Order, *In re Revisions to the Montana Rules of Civil Procedure*, No. AF 07-0157 (Mont. Apr. 26, 2011).

¶16 Pursuant to M. R. Civ. P. 55(c) (2009), a district court may set aside an entry of default for good cause shown, and may set aside a default judgment under M. R. Civ. P. 60(b). That rule provides that the court may relieve a party from a final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

M. R. Civ. P. 60(b) (2009). The motion must be made "within a reasonable time." M. R. Civ. P. 60(b) (2009). If based on claims of mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, or fraud, the motion must be made within 60 days.[3] M. R. Civ. P. 60(b) (2009).

¶17 Default was entered against Don on February 20, 2008. M. R. Civ. P. 55(c) (2009) states no specific time limit on a motion to set aside default, providing only that such a motion may be granted "for good cause." Default judgment, in the amount of $206,522.80, was entered April 14, 2010. Don's motion to have the default judgment set aside was filed eight months later, on December 14, 2010. The District Court, in its order striking Don's

---

[3] The current M. R. Civ. P. 60(c)(1) allows such a motion to be made within one year.

10

motion to set aside default judgment, found the motion untimely because it was not filed within 60 days after entry of judgment. The 60-day limit, however, applies only to motions based on claims of mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, or fraud. A request to set aside default judgment on any other grounds must be filed only "within a reasonable time."

¶18 In his motion to set aside default, Don observed that the events alleged by Gregory in his complaint "already had been found not to be the faults of any of the defendants or even caused any damages." Don also refers to the notices of position sent by counsel for each of the remaining defendants, arguing that entry of default judgment against him was unjust and, in any case, could not occur without a hearing to establish the amount of damages. Don's motion thus raised questions as to whether the judgment was void, whether prospective application of the judgment would be equitable, or whether he was otherwise entitled to relief from the judgment. M. R. Civ. P. 60(b) (2009). The District Court, concluding only that Don made "no showing of mistake, inadvertence, excusable neglect, newly discovered evidence or fraud," did not consider other grounds. Under these circumstances, the District Court erred when it applied the 60-day time limit as a strict bar, failing to consider the basis for the motion or the reasonableness of its timing.

¶19 Notice of entry of judgment was sent to Don on May 1, 2010. Notice of Gregory's appeal of the summary judgment entered in favor of the remaining defendants was sent to Don on the same day. Don was the first named party in the caption and participated in telephonic mediation on appeal. He appears not to have understood that entry of default effectively ended his role in the case. Our Opinion affirming the order of summary judgment

11

was issued November 10, 2010. Considering that Don acted without the assistance of counsel and did not fully understand his role in the case at that stage, the filing of his motion to set aside default one month after the conclusion of a pending appeal does not appear unreasonable.

¶20 We next consider whether Don was entitled to relief from the judgment under M. R. Civ. P. 60(b) (2009). Our concerns about enforcement of the default judgment in this case are many. First, default was entered despite the fact that Don made an effort to answer the complaint. Don claims that his answer, in the form of a letter to Judge Prezeau, was sent March 25, 2007, within the 20-day period for a response. M. R. Civ. P. 12(a) (2007). Although the letter was not filed until September 20, 2007, Judge McNeil was nevertheless aware of the letter and Don's attempt to answer the complaint by the time he entered default. Don's letter responded, in short and plain terms, to the allegations of Gregory's complaint. *See* M. R. Civ. P. 8(b) (2007). Mindful that default judgments are disfavored, *Mont. Prof'l Sports*, ¶ 21, and that "pleadings shall be so construed as to do substantial justice," M. R. Civ. P. 8(f) (2007), we believe the District Court could reasonably have accepted Don's letter as a sufficient answer. Moreover, Don continued to appear and participate in the case by attending a deposition, a settlement conference, and a telephonic mediation.

¶21 Second, the remaining three defendants in the case were relieved of any liability, and the legal claims upon which Gregory's complaint was based were found to be meritless. Despite the existence of a legal finding, later affirmed by this Court, that Gregory had established no basis for liability, he went on to seek recovery from the only defendant without the resources to retain counsel. He did so three years after the initial entry of default

12

and only after losing his claims against the three remaining defendants. All three of defendants' counsel objected to this action, calling their opposition "just the right thing to do" as members of the bar.

¶22 Third, the default judgment—again, in a case in which the defendant appeared on multiple occasions and all theories of liability were affirmatively rejected by the court—was entered without a hearing to determine the amount of damages. It is well-established that this was improper. "In an action for unliquidated damages the default of the defendant admits the material and traversable allegations of the complaint, but does not admit the amount of damages." *Lindsey v. Keenan*, 118 Mont. 312, 320, 165 P.2d 804, 809 (1946). In this case, Gregory's complaint sought damages in an unspecified amount as compensation for maintenance of the home while unoccupied; repair of the home; insurance and taxes on the home while unoccupied; loss of value of the home; lost time from his business; mental pain and anguish; medical treatment resulting from mold exposure; and damage to personal property stored in the home. An affidavit filed in support of his motion for final default judgment calculated these losses at $206,522.80, including $50,000 for pain and suffering. The amount of damages was not fixed by law or agreed upon by the parties, and thus the damages were unliquidated. *Sawyer v. Somers Lumber Co.*, 86 Mont. 169, 178, 282 P. 852, 854 (1929). Regardless of whether Don was properly deemed to have admitted the allegations of the complaint, he was entitled to appear at a hearing to determine the amount of any default judgment. M. R. Civ. P. 55(b) (2009); *Paxson v. Rice*, 217 Mont. 521, 524, 706 P.2d 123, 125 (1985) ("A defaulting party loses his defenses against the claim, but the

13

claim should only be for the amount of damages actually suffered."); *Lindsey*, 118 Mont. at 321, 165 P.2d at 809. No such hearing was ever held.

¶23 Fourth, the record in this case does not adequately or accurately reflect Don's attempts to defend his case. There is no record of what happened to Don's letter to Judge Prezeau during the six months between March 25, 2007, when Don claims he sent the letter, and September 20, 2007, when it finally appears in the District Court file. Such an absence in the record does not aid in facilitating appellate review. *See City of Billings v. Peterson*, 2004 MT 232, ¶ 20, 322 Mont. 444, 97 P.3d 532. Further, self-represented litigants should be granted some degree of latitude. *Greenup v. Russell*, 2000 MT 154, ¶ 15, 300 Mont. 136, 3 P.3d 124. While we recognize that this does not mean self-represented parties are to be granted exemptions from the rules of procedure governing our system of justice, *Greenup*, ¶ 15, neither are they to be unduly obstructed in their attempts to access that system of justice. Consistent with this principle, M. R. Civ. P. 5(4)(d) now provides that "[t]he clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice." Finally, we recognize that the letter to Judge Prezeau, because it was not served on opposing counsel, constituted an ex parte communication. In accordance with Rule 2.10 of our Rules of Judicial Conduct, however, the proper procedure was not to ignore the letter for six months under still unknown circumstances, but to give prompt notice of the letter to counsel for all parties.[4]

---

[4] Rule 2.10(B) states: "If a judge receives an ex parte communication having a potentially significant bearing upon the substance of a matter, the judge shall make provision promptly to notify the parties of the content of the communication and provide the parties with an opportunity to

14

¶24 The record presented in support of Don's December 14, 2010 motion to set aside the default judgment establishes that, in light of his attempts to appear and defend, and the lack of any finding of liability against the remaining three defendants, prospective application of the judgment was not equitable. M. R. Civ. P. 60(b) (2009). Our rules specifically allow relief to be granted in such circumstances. M. R. Civ. P. 60(b) (2009) (allowing a court to grant relief from a judgment where "it is no longer equitable that the judgment should have prospective application" or for "any other reason justifying relief from the operation of the judgment."). The rather unique circumstances of this case demonstrated that, in the interests of justice, Don was entitled to relief from the judgment. M. R. Civ. P. 60(b) (2009). Saddling a retired contractor with a judgment ultimately totaling $270,000, by sole virtue of the fact that he was the only defendant without the resources necessary to navigate the judicial system, ultimately driving him to bankruptcy as a result of a liability that, as a matter of law, did not exist in the first place, is a harsh result and indeed a miscarriage of justice. M. R. App. P. 4(6).

## CONCLUSION

¶25 We reverse the order of the District Court striking Don's motion to set aside default judgment. We remand for entry of an order setting aside the default judgment and directing Gregory to reimburse Don for amounts recovered thereunder.

¶26 Reversed.

/S/ LAURIE McKINNON

respond. If such communication is in writing, a copy of it shall be made available to the parties and retained."

15

We Concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA

Justice Jim Rice, dissenting.

¶27 Although I disagree with the Court's determination to grant multi-faceted relief to Don, I believe it is important and would be helpful to the Bar and to litigants in future cases to highlight the Court's holdings herein. Further, since the Court's decision is premised largely upon a nonspecific "under the circumstances" rationale, it is essential that the factual and procedural background of this case be set forth completely and accurately so that the circumstances may be properly analyzed and the Court's holdings applied appropriately in future cases.

***Factual and Procedural Background***

¶28 After Don was served with the summons and complaint in this matter on March 13, 2007, he filed a financial affidavit and request for waiver of fees with the District Court on April 4, 2007. In his affidavit, Don averred that he owned a home valued at $200,000, against which was owed $135,000, and that he owned two vehicles, one being a then-late model 2006 GMC pickup that he valued at $43,000. He also owned a 1996 Jeep. Absent from his affidavit was information later developed in this litigation that he was an owner of a business known as Don Hall Builders.[1] The assets associated with this business came to light when Gregory began executing on the default judgment obtained against Don. Those

---

[1] In his 2/12/08 deposition, Don testified that he had operated as a building contractor for over 20 years, but that he had recently retired.

assets included a 5th-wheel travel trailer, generators, compressors, circular saws, band saw, electric and cordless drills and drill sets, chisel sets, drywall drills, sanders, ladders, table saws, reciprocating saw, radial arm saw, planer, lathe, scaffolding and platform, framing nailers, concrete nailers, finish nailers, electric grinders, bench grinder, house heaters, shop heater and vacuum, super routers, drill presses, ratchet and socket sets, bushing sets, chainsaw, chain hoist, elevation scale, multi-meter, tap and die sets, tables, buffer/polisher, tile cutter, paint sprayer, paint mixer, pressure washer, lift jacks, propane weed burner, as well as grease guns, tool boxes, stand-up tool box, tool accessory kit, staplers, tool sets, and other power tools. Also executed upon, but omitted from his financial affidavit, was Don's assets related to fishing: 19' Gull boat with inboard/outboard motor, trolling motor and fuel tank, 12' Harbor Craft boat, five horse boat motor and tank, marine radio, electric downrigger, fish finder, raft, boat wench, Minn-kota trolling motor, tackle boxes, tackle, reels and rods, and boxes of miscellaneous equipment. Don listed his income as "SSI," but the record does not indicate how he qualified for Supplemental Security Income while also owning the indicated assets. The Court holds that Don was "without the resources necessary to navigate the judicial system." Opinion, ¶ 24.

¶29 The Court states, as it does in several ways in the opinion, that Don "acted without the assistance of counsel and did not fully understand his role in the case." Opinion, ¶ 19. Don was represented by counsel after this proceeding progressed to the point that Gregory began executing on the judgment entered against Don. Don was also represented by counsel when he filed for bankruptcy, in which he obtained a discharge of the judgment that the Court here has ordered to be set aside.

¶30 After being served with process, Don was granted a waiver of filing fees, but he did not file an answer. Instead, he wrote a letter to Judge Prezeau. In addition to the Court's quotes from the letter, Don described Gregory's claims as "fraudulent" and told Judge Prezeau that "I can not afford an Attorney and will not." Don also sent a letter to Gregory's counsel, in which he stated:

> As for a attorney or respectful lawyer and or person of this State, and County you are a disgrace.
>
> .    .    .
>
> I really think you were taught wrong, you should go back to school and get a education that will help you and others, and not try to bullshit or falsely accuse others.
>
> .    .    .
>
> If there was any thing hid by any one in this house sale it was by the seller only, and maybe you.
>
> .    .    .
>
> I feel I will not or can not answer these bold face lies in any other form.

¶31 The Complaint and Amended Complaint alleged that Don had "inspected the property prior to closing and advised Plaintiff of certain findings, but did not disclose the material defects and adverse conditions" in the property. Don, "in the course of his business, profession, and employment and in connection with the aforesaid transaction in which he had a pecuniary interest, supplied false information to Plaintiff for Plaintiff's guidance in the transaction." The tort alleged against Don was premised on the Restatement (Second) of Torts § 552, providing that one who, in the course of his business or profession, supplies false information for the guidance of others in their business transactions, is liable for

18

pecuniary loss caused to them by their justifiable reliance upon the information if he fails to exercise reasonable care or competence in communicating the information. *See Morrow v. Abraham*, 2014 MT 117, ¶¶ 45-46, 375 Mont. 38, 324 P.3d 1167 (explaining this Restatement section provides the definition for the tort of negligent misrepresentation). Gregory contracted with Don to conduct a property inspection and advise him directly about any defects in the house, and thus made a separate claim against Don under a different theory of liability than the other Defendants, who were the seller and the real estate agents in the transaction. The Court quotes from Don's letter to Judge Prezeau that "the house was older, and therefore likely to have some flaws," Opinion, ¶ 3, but Don's written report submitted to Gregory prior to the transaction stated just the opposite, that the property was "very nice" and had "lots of potential." Don's report did not say the property was "old" and had "flaws," but noted only two negatives—that the window trim needed to be repainted and that the metal roofing had one hole—and none of the significant defects claimed to be material by Gregory.[2, 3]

¶32     In November 2007, as the Court notes, the District Court issued an order holding that Don's letters to Judge Prezeau and to Gregory's counsel failed to comply with the Rules of Civil Procedure and ordering that "Pro Se Defendant DON HALL shall serve and file an Answer complying with Rule 8, M.R.Civ.P. within ten (10) days, failing which the Court

---

[2] The Court also quotes Don's statement to Judge Prezeau that he had not been paid and had done the inspection "as a favor," Opinion, ¶ 3. However, there is evidence that Gregory paid $200 for Don's inspection of the property.

[3] The Complaint alleged that the defects included "leaks in the building, leaks in the plumbing, leaks in the waterline serving water to the Property, inoperability of heating systems, plugged plumbing and drains, [and] the presence of toxic mold."

shall enter judgment on the issue of liability against Pro Se Defendant DON HALL . . . ." Don was served with the order, but consistent with the statement in his letters that he "will not" respond further, Don did not file an answer, produce any other document, or otherwise respond to the order.

¶33    Three months later, in February 2008, Gregory moved for a default to be entered against Don for his failure to file an answer following the District Court's order. Don was served, but he did not respond to the motion. Thus, his default was entered.

¶34    The litigation proceeded and a pre-trial order was entered in December 2008. The parties agreed and the District Court ordered that "[t]he default of Don Hall has been entered. The only issue pertaining in the litigation regarding Don Hall is the amount of damages which should be awarded Greg Hall against Don Hall."[4]

¶35    In February 2009, the District Court ruled on the Defendants' motions for summary judgment. Defendant Heinlein, the seller in the transaction, argued that he had no duty to disclose any defects to Gregory, but, alternatively, "[i]f Heinlein had a duty to disclose any potential defects with the real property, [Gregory] contractually waived that duty by hiring a person to perform a property inspection; and relying upon the property inspection in purchasing the property to the exclusion of Heinlein's representations." Indeed, in the Buy-Sell Agreement, Gregory waived the home inspection contingency, writing on the document by hand that "I have had the inspection—I release home inspection." That inspection Gregory referred to was, of course, performed by Don.

---

[4] The pre-trial order was revised by court order in January 2009, but none of the revisions affected Don's position in the case.

¶36    The District Court entered summary judgment against Gregory and in favor of the other Defendants, reasoning that "'means were at hand' to discover the 'truth' and avoid this transaction altogether. Therefore, armed with this imputed knowledge, Plaintiff Hall cannot claim reliance" or that the defendants caused him damages. The court determined that Gregory could not prevail against the other Defendants because knowledge of the conditions of the house, as noted on the sale documents prepared by the other Defendants, was imputed to Gregory. However, Don's liability to Gregory under the tort of professional reliance was not addressed, having been rendered moot by entry of Don's default, leaving no liability issues to be resolved.

¶37    The Court notes that Gregory appealed from the entry of summary judgment against the other Defendants. Don did not appeal from the entry of judgment against him. However, in August of 2009, this Court granted a motion to dismiss the appeal filed by the other Defendants, noting that "[t]he District Court has not yet, however, entered a judgment setting the amount of damages to be awarded against defendant Don Hall . . . ." We dismissed without prejudice to permit further proceedings regarding Don Hall so that a final judgment could be entered.

¶38    After dismissal of the first appeal, Gregory moved for entry of a "final" default judgment against Don. The Court notes that the motion stated that "[c]ontact with [Don] is impractical and would serve no purpose" and thus Gregory did not contact Don to determine his position on the motion. Opinion, ¶ 6. Gregory did serve Don with the motion but Don did not respond. As the Court notes, the other Defendants responded. Defendants Cernick and Heinlein argued that "Damages must be reasonable" and that "a closer look" at

21

Gregory's request for damages "may be warranted." However, a default judgment in the full amount of $206,522.80 was entered in April 2010.

¶39    In May 2010, Gregory filed a second notice of appeal from the entry of summary judgment in favor of the other Defendants. Don did not appeal from the entry of default or default judgment against him. In October 2010, while Gregory's appeal was pending, a writ of execution was issued for seizure of Don's property. Don followed this action by writing letters to the District Court, in which he stated that "maybe I could have asked some one for advice once in awhile and kept the cost very little." The District Court deemed Don's letters to be a motion to set aside the judgment and denied it in January 2011. Don did not appeal from the court's denial of his request to set aside the judgment. Our decision on Gregory's appeal was rendered in November 2010.

¶40    Two and one-half years later, following a seizure of Don's property in June 2013, Don, represented by counsel, moved the District Court for a hearing on exemptions from execution. The motion was denied, and as the Court notes, was timely appealed by Don. Thus, the issue properly before the Court, prior to any of the Court's rulings herein, is the District Court's denial of Don's motion for a hearing on exemptions. Don was granted discharge of the judgment in bankruptcy in August 2014.

***The Court's Holdings***

¶41    Out-of-time appeal. The Court construes Don's briefing as an out-of-time appeal from the District Court's denial of Don's motion to set aside the default judgment. Opinion, ¶ 15. The timeframe to be noted for this ruling is that Don's default was entered in February 2008, the "final" default judgment was entered in April 2010, and Don's motion to set aside

22

the default judgment was denied in January 2011. After he was served, Don did not respond to Gregory's motions for either entry of default or default judgment, and he did not appeal from either the entry of judgment or the denial of his motion to set aside. The Court's ruling permits Don to now litigate on appeal the denial of his set-aside motion from four and one-half years ago, as well as the default stretching back seven and one-half years. The Court's reasoning is that, under M. R. App. P. 4(6) (2011), we may grant an out-of-time appeal "in the infrequent harsh case and under extraordinary circumstances amounting to a gross miscarriage of justice."

¶42 The application of M. R. App. P. 4(6)[5] to the circumstances here will serve as helpful precedent for litigants seeking to challenge judgments entered, or to set aside motions denied, after failing to respond to motions at the time of entry, and after years have passed following the expiration of the time for appeal. In addition to the timeframe noted above, the Court found significant that Don was pro se, "claim[ed] little knowledge of the legal system," was "without the resources necessary to navigate the judicial system," and was "the only defendant without the resources to retain counsel." Opinion, ¶¶ 2, 24, 21. Thus, pro se defendants who do not understand the legal system and have resources equal to or less than Don with which to hire counsel will most readily come within this ruling, which stands in clear contrast to our earlier rulings. As a recent example, in *State v. Osborn*, 2015 MT 48, 378 Mont. 244, 343 P.3d 1148, the Defendant challenged his sentence of commitment by way of a Rule 60(b) motion for relief from judgment instead of appealing to this Court, and missed the time for appealing. *Osborn*, ¶¶ 7, 15. The time for appealing expired on March

---

[5] The same rule and citation as stated in the 2011 version remains in effect.

1, 2014, and Osborn filed a notice of appeal on June 26, 2014. *Osborn*, ¶ 15. We noted that, while "Osborn could have challenged the legality of his sentence through a direct appeal to this Court. . . . a defendant must file notice of appeal within 60 days after entry of judgment." *Osborn*, ¶ 15. We noted that we can grant out-of-time appeals only in the infrequent harsh case and we did not grant Osborn an out-of-time appeal. *Osborn*, ¶ 15. Thus, Osborn lost his opportunity to challenge his sentence on appeal.

¶43    Setting aside default/default judgment. The Court first holds that the District Court erred by failing to consider "the reasonableness of [the] timing" of Don's motion to set aside the judgment. Opinion, ¶ 18. The Court concludes that Don's filing of the motion "one month after the conclusion of a pending appeal does not appear unreasonable" when it is considered that "[h]e appears not to have understood that entry of default effectively ended his role in the case." Opinion, ¶ 19. To clarify, Don filed his motion to set aside in December 2010. This was two years and 10 months after the entry of default in February 2008, which was entered after Don failed to file an answer in response to the District Court's order requiring him to do so, and then failed to respond to Gregory's motion for entry of default. It was also eight months after entry of the "final" default judgment in April 2010, which was entered after Don failed to respond to Gregory's motion for entry of the judgment, and which proceeded from our dismissal of the first appeal for the specific purpose of including an assessment of damages against Don in a final judgment. Further, it was seven months after Gregory filed his second appeal in May 2010, during which time Don did not appeal from the entry of default judgment against him. Consequently, this ruling will provide helpful flexibility to pro se litigants with limited resources like Don's to

24

initiate challenges that are considered timely to defaults and default judgments long after they have been entered, even though the litigants have failed to avail themselves of the remedies of responding to motions for such relief, and of subsequent appeal, as long as the litigants did not understand their role in the case.

¶44 Turning to the merits of the motion, the Court grants relief from the judgment because it determines that the judgment is not equitable. Opinion, ¶ 24. The Court places heavy reliance on "the lack of any finding of liability against the remaining three defendants," which it believes should also excuse any liability against Don. Opinion, ¶ 24. The Court believes that the District Court's "determination that material defects were disclosed to Gregory undermined the factual basis of his claims against all defendants, including Donald." Opinion, ¶ 5. However, as noted, the allegations against Don were that Gregory had contracted with Don to inspect the property and advise Gregory of any defects in the property. The other Defendants were dismissed because the District Court concluded that the sale documents, prepared by the real estate agents, had sufficiently provided "the means" for Gregory to learn the truth, that knowledge of the defects should be imputed to Gregory, and, therefore, the other Defendants had satisfied any duty to disclose the defects to Gregory. However, Gregory had hired Don to perform an independent inspection and advise him of any defects in the property. This was a separate relationship and a separate theory of liability under Restatement of Torts (Second) § 552, negligent misrepresentation, that was not absolved under the "imputation of knowledge" rationale applicable to the other Defendants. Rather, the tort is committed when:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, *if he fails to exercise reasonable care or competence in obtaining or communicating the information*.

Restatement (Second) of Torts § 552(1) (1965) (emphasis added).

¶45 The issue concerning Don is not, like the other Defendants, whether Gregory had imputed knowledge of the defects, but whether Don failed to exercise reasonable care in obtaining or communicating information about the defects to Gregory. Don was hired to be a safety net for Gregory, to provide another mechanism of discovering any defects in the property. There are certainly unresolved factual issues in this regard, such as whether Don had a pecuniary interest in the transaction, and whether his inspection report was accurate. However, those issues were never tested—and Gregory had no opportunity to prove them— because of Don's default. Bottom line, the dismissal of the other Defendants did not resolve Gregory's claim against Don, and the Court's statements that "all theories of liability were affirmatively rejected by the court" and that the claim against Don was "meritless" are simply incorrect. Opinion, ¶¶ 22-21. A viable claim remained against Don, but it remained untested because of his own default.

¶46 The Court offers statements made by the other Defendants that objected to entry of judgment against Don as "the right thing to do." Opinion, ¶¶ 8, 21. It should be borne in mind that all of these statements were made *after* these Defendants had prevailed on summary judgment. *Prior* to this success, the same Defendants, as quoted above, were seeking to shift their duty to disclose defects to Don, and were stipulating that Don was in

26

default and that a trial should determine the damages for which he was liable. The thrust of their in-court statements following the entry of summary judgment was not that Don should be exonerated, but that the calculation of damages against him should be reasonable.

¶47 Nonetheless, the Court's determination to set aside the default judgment shows the elastic nature of the application of equity and of its interpretation of "any other reason justifying relief" under Rule 60(b). Opinion, ¶ 24. This will provide a much expanded avenue for arguments from litigants who seek to attack judgments on equitable grounds, even years after the judgments were entered without response from the litigants.

¶48 <u>Prejudice to represented parties</u>. The Court cites *Greenup v. Russell* for the rule that self-represented litigants "should be granted some degree of latitude," Opinion, ¶ 23, but does not mention that the "latitude cannot be so wide as to prejudice the other party." 2000 MT 154, ¶ 15, 300 Mont. 136, 3 P.3d 124. Unfortunately, the Court does not address whether setting aside the default judgment at this point will cause any prejudice to Gregory, probably an oversight. Considering that the judgment was obtained years ago by Gregory's application to the court after Don had violated the court's order to file an answer and after Don had failed to respond to the application for the judgment, that Don failed to appeal the entry of judgment and the denial of his motion to set aside the judgment, that a writ of execution was issued and Gregory executed on Don's property years ago, and that eight years have passed since Gregory filed his complaint, it may be arguable that Gregory has been prejudiced by the Court's accommodations to Don. Regardless, this case will stand for the proposition that, whatever level of prejudice is necessary to limit a Court's

accommodation of a self-represented party, the bar is relatively high, something that counsel for former self-represented parties may want to note.

¶49    The final rule provided by the Court is simply a principle that advocates should always bear in mind.  No matter how many years have passed, and no matter how many rules have been broken, if the Court's sympathy for a party can be evoked, then the law will stand as no obstacle to relief.

¶50    I dissent.


/S/ JIM RICE